RECEIVED

NOV 2 3 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
MONROE LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| HUNTER PAUL CAVALIER, BY HIS PARENTS KEVIN PAUL CAVALIER AND JULIE ANN CAVALIER, PLAINTIFFS PRO SE | CIVIL ACTION NO. 02-695 |
| VERSUS | JUDGE ROBERT G. JAMES |
| CADDO PARISH SCHOOL BOARD, ET AL. | MAG. JUDGE KAREN L. HAYES |

## OPINION

This is an action brought by Julie Ann Cavalier and Kevin Paul Cavalier on behalf of their son, Hunter Cavalier (collectively "the Cavaliers"), against the Caddo Parish School Board ("School Board") to recover damages as a result of civil rights violations under 42 U.S.C. §§ 1981, 1983, 2000(d), and the Fourteenth Amendment to the United States Constitution.

## JURISDICTION

The Court has federal question jurisdiction of this matter pursuant to 42 U.S.C. §§ 1981, 1983, 2000(d), and the Fourteenth Amendment to the United States Constitution.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court hereby enters the following findings of fact and conclusions of law. To the extent that any finding of fact constitutes a conclusion of law, the Court hereby adopts it as such, and to the extent that any conclusion of law constitutes a finding of fact, the Court hereby adopts it as such.

### A. FINDINGS OF FACT

Hunter Cavalier, who is white, was denied admission to the sixth grade at Caddo Middle

Magnet School ("CMMS"), for the 2002-2003 school year. His parents, Kevin and Julie Cavalier, brought this suit on behalf of their son against the School Board.[1] The Cavaliers alleged that their son was illegally discriminated against on the basis of his race.

CMMS is currently ranked as a five-star school, the highest honor for middle schools in Louisiana. To be admitted to CMMS, potential students must satisfy both academic and non-academic requirements. The Cavaliers' son met the general requirements for admission to CMMS.

In addition, potential students must take a standardized achievement test, the California Achievement Test ("CAT"). In the 2002-2003 school year the lowest CAT score for a non-sibling white applicant granted admission was 142, while the lowest CAT score for a non-sibling black applicant granted admission was 117. The Cavaliers' son scored 140 on the CAT test. On March 1, 2002, the Cavaliers were notified by Kay Robinson, principal at CMMS, that "[b]ased on the entrance achievement tests, [Hunter] does not qualify for initial enrollment."

On April 9, 2002, the Cavaliers filed a complaint against the School Board claiming discrimination based on race in violation of 42 U.S.C. §§ 1981, 1983, 2000(d), and the Equal Protection clause of the Fourteenth Amendment of the United States Constitution. The parties consented to the exercise of jurisdiction by a magistrate judge. The School Board filed a motion to dismiss or motion for summary judgment arguing that CMMS' admission procedure was pursuant to a court-ordered consent decree and, therefore, constitutional. The magistrate judge granted the School Board's motion and dismissed all the claims.

---

[1] The Court notes that throughout these proceedings the Cavaliers have represented themselves.

The Cavaliers appealed to the United States Court of Appeals for the Fifth Circuit. *See Cavalier v. Caddo Parish Sch. Bd.*, 403 F.3d 246 (5th Cir 2005). The School Board filed a motion to dismiss the appeal as moot because it had offered the Cavaliers' son admission for the eighth grade year. The Fifth Circuit denied the School Board's motion. In so ruling, the Fifth Circuit stated the following:

> . . . In their complaint, the Cavaliers sought, among other things, compensatory damages. In their opposition to the School Board's motion to dismiss the appeal, the Cavaliers have alleged damages due to the School Board's policy. The Cavaliers brought their suit in 2002 after Hunter was denied admission to CMMS for the 2002-2003 school year, his sixth grade year. The Cavaliers allege that because of the denial of Hunter's admission to CMMS, in order to provide the best alternative to CMMS, they enrolled him in a private school for two years, his sixth and seventh grade years, at a cost that was presumably higher than what they would have had to pay if Hunter had attended CMMS. The private school was also allegedly further from their residence than CMMS, resulting in additional transportation costs. The Cavaliers have sought, among other things, compensatory damages and have alleged damages due to the School Board's policy. Past damages that are in no way addressed by the offer of admission to Hunter for his eighth grade year. We accordingly deny the motion to dismiss the appeal as moot.

*Id.* at 249, n. 6.

The Fifth Circuit ultimately reversed the magistrate judge's ruling, stating in pertinent part:

> The School Board's current policy is essentially a racial balancing quota. The 1981 Consent Decree no longer applies to CMMS, and racial balancing by itself is not a constitutionally proper reason for employing racial classifications . . . [t]he School Board has failed to show any compelling government interest that it furthers by its racial classification. The policy is therefore unconstitutional.

*Id.* at 260.

The Fifth Circuit remanded the case back to the district court to determine damages. The Cavaliers contend that because their son was unconstitutionally denied admission to CMMS, the

3

Cavaliers suffered damages by enrolling their son in a private school, Calvary Baptist ("Calvary"), in order to provide the best alternative to CMMS' curriculum. The School Board contends that the Cavaliers are not entitled to damages because their son could have received a comparable education at other local public schools.[2] The School Board also contends that, even if the Cavaliers are entitled to damages, the Cavaliers failed to mitigate their damages by not enrolling their son in CMMS when he was offered admission for his seventh and eighth grade years.

The School Board contends it published in the local newspaper an announcement alerting parents to openings for the seventh and eighth grade years. The School Board argues that the Cavaliers should have known to reapply for admission for the 2003-2004 school year because of the announcement in the newspaper. The Cavaliers argue that they never believed it was necessary to reapply for admission to the seventh grade because they were adamantly fighting to get their son in CMMS, and everyone at CMMS knew about their lawsuit. In addition, the School Board never sent a letter to the Cavaliers that offered their son admission to the seventh grade. Ultimately, the Cavaliers did not enroll their son in CMMS for the 2003-2004 school year.

At the beginning of the eighth grade year, CMMS sent a letter to the Cavaliers offering their son admission. The Cavaliers decided not to enroll their son in CMMS for the 2004-2005 school year because they felt that it would have disrupted their son's education and social development.

---

[2]The School Board argues that the Cavaliers' son could have received a comparable education at Keithville, Youree Drive ("Youree"), and Herndon Magnet ("Herndon") middle schools.

At trial, both parties presented numerous witnesses who testified about the quality of education at CMMS compared to other public schools in the surrounding area. The witnesses testified about the different curricula available at each school and the test scores for each school. Witnesses testified that CMMS has a comparable curriculum to local public schools that contain advanced education programs. However, these witnesses also testified that CMMS has the highest test scores and is recognized as one of the top schools in the state.

### B. CONCLUSIONS OF LAW

#### 1. Title 42, U.S.C. § 1983 and Compensatory Damages

Title 42, U.S.C. § 1983, derived from § 1 of the Civil Rights Act of 1871, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

The Supreme Court has held that § 1983 creates a "'species of tort liability' that favors persons who are deprived of their 'rights, privileges or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253 (1978). "Consequently, 'the basic purpose' of § 1983 damages is 'to compensate persons for injuries that are caused by the deprivation of constitutional rights.'" *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (citing *Carey v. Piphus*, 435 U.S. at 254).

"Compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation . . . , personal humiliation, and mental anguish and suffering.'" *Id.* at 307 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)).

5

Compensatory damages may not be awarded absent proof of actual injury. *Carey*, 435 U.S. at 264. "The abstract value of a constitutional right [alone] may not form the basis for § 1983 damages." *Memphis*, 477 U.S. at 308. However, absent proof of actual injury, "the denial of procedural due process should be actionable for nominal damages without proof of actual injury." *Carey*, 435 U.S. at 266. Awarding nominal damages for the "absolute" right to procedural due process "recognizes the importance to organized society that [this] right be scrupulously observed" while "remain[ing] true to the principle that substantial damages should be awarded only to compensate actual injury." *Id.*

Mental anguish and emotional distress are recoverable as compensatory damages if there is a "specific discernable injury to the claimant's emotional state, proven with evidence regarding the nature and extent of the harm." *Hitt v. Connell*, 301 F.3d 240, 250 (5th Cir. 2002) (citing *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 940 (5th Cir. 1996)). A plaintiff's own testimony standing alone may be enough to prove emotional damages, and a plaintiff is not required to submit corroborating evidence from someone such as a family member. *Id.* However, "'hurt feelings, anger and frustration are part of life' and are not the types of emotional harm that could support an award of damages." *Id.* (citing *Patterson*, 90 F.3d at 940).

### 2. Loss of Earning Capacity or Future Earnings

"There is no general rule regarding proof required for loss of earning capacity, other than that each case is judged on its particular facts and the damages need to be proven only to the degree to which they are ascertainable." *Lowery v. Spa Crafters, Inc.*, Docket No. SA03CA0073-XR, 2004 WL 1824382, at* 1 (W.D. Tex. Aug. 16, 2004) (citing *Jones v. Wal-Mart Stores, Inc.*, 870 F.2d 982, 989-90 (5th Cir. 1989)). "Loss of earning capacity that a plaintiff will suffer in the

future is always uncertain and is left largely to . . . sound judgment and discretion." *Id.* It is within the broad discretion of the district court to determine any award of future earnings. *See Kelly v. Panama Canal Com'n*, 26 F.3d 597, 602 (5th Cir. 1994).

### 3. Analysis of Claims

The Supreme Court has eloquently described the importance of education in the following manner:

> Today, education is perhaps the most important function of state and local governments. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society. It is required in the performance of our most basic public responsibilities, even service in the armed forces. It is the very foundation of good citizenship. Today it is a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment. In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education. Such an opportunity, where the state has undertaken to provide it, is a right which must be made available to all on equal terms.

*See Brown v. Board of Educ.*, 347 U.S. 483, 493 (1954).

While the Supreme Court has held that individuals are entitled to an opportunity of education on equal terms, the Supreme Court has not provided any guidance as to whether there exists a difference in the value of one education over another. The Court is asked to determine whether the Cavaliers are entitled to damages after their son was unconstitutionally denied enrollment to a top-ranked public school, which prompted the Cavaliers to send their son to a private school to receive what the Cavaliers believed to be a comparable education.

The Cavaliers claim that they are entitled to compensatory damages in the form of tuition at Calvary, transportation costs, uniform costs, and emotional distress. The Cavaliers also claim that they are entitled to loss of future earnings and appellate costs. The Court will address each

claim in turn.

The Fifth Circuit previously determined that the Cavaliers' constitutional rights were violated when their son was denied admission to CMMS. However, the School Board argues that the Cavaliers are entitled only to nominal damages because they could have sent their son to another public school with a curriculum comparable to CMMS.

The witnesses testified that the curricula of Keithville, Youree, Herndon, and CMMS are comparable.[3] However, each witness also testified that CMMS was considered an outstanding school, CMMS had the highest score reports, and CMMS was recognized as a top-ranking middle school in the state. The Cavaliers argue that while the curricula may have similarities, they are not identical, as the School Board claims. The Cavaliers submitted the "School Report Cards for Parents" and "Accountability Results" published by the Louisiana Department of Education. Overall, these reports demonstrate that CMMS was considered a top school and had higher test scores than the other middle schools.[4]

The Cavaliers argue that based on their judgment, they made a decision to send their son to a school they felt was comparable to CMMS when their son was denied admission to CMMS. The Court agrees with the Cavaliers' argument. The Court will not second guess the parents' second choice of school when their child has been unconstitutionally denied admission to the school of their first choice. The Court finds that the Cavaliers are entitled to recover the cost of

---

[3]The Court notes that all the witnesses worked for the school district in different capacities ranging from superintendent, principal, school board member, to teachers.

[4]The 2003-2004 Accountability Reports published by the Louisiana Department of Ecucation gives Keithville and Youree two stars and Herndon four stars for overall performance while giving CMMS the highest rating, five stars.

tuition at Calvary for their son's sixth grade year.

The School Board also argues that even if the Cavaliers are entitled to compensatory damages, they are not entitled to the value of tuition for the seventh and eighth grade academic year because the Cavaliers did not mitigate their damages. The School Board argues that the Cavaliers are not entitled to tuition for the seventh grade school year because the School Board alerted the public to openings by publishing an article in the newspaper. The School Board argues that the Cavaliers are prohibited from recovery because they should have known to reapply for admission. The Cavaliers claim that they should not have had to reapply because everyone at CMMS and the school district knew that they wanted their son to attend CMMS. The Court finds that the Cavaliers were not required to reapply for their son's admission because the school district was aware of the Cavaliers' lawsuit and their strong desire to have their son admitted to CMMS. Therefore, the Cavaliers are also entitled to recover the cost of tuition at Calvary for their son's seventh grade year.

However, the Court finds that the Cavaliers are not entitled to recover the cost of tuition at Calvary for the eighth grade year because the Cavaliers were sent a letter offering their son admission to CMMS, but the Cavaliers chose to keep their son enrolled at Calvary.

The Court awards the Cavaliers compensatory damages in the total amount of $7,500.00 for the tuition paid to Calvary for their son's sixth and seventh grade years.

The Court finds that the Cavaliers are not entitled to recover additional costs associated with sending their son to Calvary that include transportation, meals, and uniform costs for the sixth and seventh grade years. While the Cavaliers believe that they have spent a considerable amount of money on these items, the Court finds that a same or similar amount of money may

have been just as easily spent had the Cavaliers' son attended CMMS. These damages are too remote and speculative to grant with certainty and would be inappropriate under such circumstances.

The Court finds that the Cavaliers are not entitled to recover emotional distress damages. While the Cavaliers' son may have experienced hurt feelings, anger, or frustration, these feelings are part of life and do not support an award of damages. *See Patterson*, 90 F.3d at 940.

The Court finds that the Cavaliers are not entitled to recover damages for loss of future earnings. The Cavaliers argue that a relationship exists between the quality of education a person receives and his or her future earnings. According to the Cavaliers, their son will not make as much money in the future as he would have made had he been allowed to attend CMMS. The Court finds that the Cavaliers' son's potential loss of future earnings is too speculative to be determined and denies damages for loss of future earnings.

Finally, the Court finds that it cannot award the Cavaliers costs associated with their appeal to the Fifth Circuit. Rule 39(d) of the Federal Rules of Appellate Procedure states in pertinent part that, "[a] party who wants costs taxed must–within 14 days after entry of judgment–file with the circuit clerk, with proof of service, an itemized and verified bill of costs." The Cavaliers did not submit their bill of costs to the Clerk of Court for the Fifth Circuit within 14 days of entry of the appellate judgment and are prohibited from doing so now.

## CONCLUSION

For the foregoing reasons, the Court awards the Cavaliers compensatory damages in the total amount of $7,500.00 and post-judgment interest as set forth in 28 U.S.C. § 1961.

MONROE, LOUISIANA, this 23rd day of November, 2005.

*Robert G. James*
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE